**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

**Civil Action No. 11-cv-03225-RM-KMT**

MICHAEL D. GRAVERT,

       Plaintiff,

v.

SHAMROCK FOOD COMPANY,

       Defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

    Plaintiff Michael D. Gravert ("Gravert") brings this action against his former employer, Shamrock Food Company ("Shamrock"), alleging that he was subjected to a hostile work environment due to age discrimination and then terminated in violation of the Age in Employment Discrimination Act ("ADEA") and the Colorado Anti-Discrimination Act ("CADA"). Gravert further alleges that his contractual rights as set forth in Shamrock's policies and procedures were breached in violation of Colorado common law. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction). Before this Court is Shamrock's Motion for Summary Judgment ("Motion"). (ECF No. 22.) For the reasons set forth below, the Motion is granted.

**I.  LEGAL STANDARD**

    Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569

(10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## II.    FACTUAL BACKGROUND

The relevant facts, taken in the light most favorable to Gravert, are as follows: Gravert was employed by Shamrock as a full-time delivery driver from December 11, 2006 to February 25, 2011. (ECF No. 25 at 4.) Gravert was born on October 30, 1964, was 42 years old when hired, and was 46 years old at the time of his termination. (ECF No. 2 ¶ 8.)

When Gravert became an employee of Shamrock, he signed a confidentiality agreement as well as a "Receipt of Handbook" form stating that he "received a copy of the Shamrock Foods Company Drivers Manual" (the "Manual"). (ECF No. 22-2 at 33.) The confidentiality agreement had a section labeled "At-Will Employment," which required Gravert to "acknowledge[] that this Agreement in no way or manner alters the Employee's status as an at-will employee of the Company, which means that either party may terminate the relationship at any time for any reason, with or without cause, without in any way altering or affecting the enforceability of this Agreement, which the Employee acknowledges is valid and enforceable regardless of the reason for the Employee's separation, or whether his separation is voluntary or involuntary." (*Id.* at 2.)

The Manual states that "[a]ny employee involved in an accident in a Shamrock vehicle must report the following details immediately to a supervisor or manager: [lists types of information required to be reported, including] Status of both vehicles and occupants." (*Id.* at 37.) The Manual requires that drivers take photographs of the scene, including "[a]ll vehicles including license plates or other objects involved." (*Id.* at 38.) The Manual lays out Shamrock's policies with regard to driver accidents and consequences:

> **Determination of Cause.** All accidents will be reviewed by an accident review committee made up of drivers and staff members. They will review accident reports, pictures and statements to determine cause and if the accident was preventable or non preventable. If you choose to, you may attend the review and explain the accident. Your supervisor will notify you of the date and time. If the accident is found preventable you will have 5 days from the date of determination to request an appeal. All appeals must be submitted in writing.
>
> **Point Assessment.** The accident review committee will assess points to all accidents deemed preventable using the following guidelines:
>
> **5 Point Violations (Minor)**
> Only 1 moving vehicle
> Total property damage of less than $2,000
> No indication of careless/reckless driving or negligent behavior
> No violation of a DOT regulation
>
> **10 Point Violations (Major)**
> Two (2) or more vehicles
> Total property damages of less than $10,000
> Personal injury to any parties involved in the accident
> Violation of a DOT regulation at the time of the accident
> Careless driving or negligent behavior at the time of the accident
>
> **15 Point Violations (Catastrophic)**
> Death or permanent disability to any parties involved in the accident
> Property damage of more than $10,000
> Environmental damage with a violation of a law or regulation
> Falling asleep while driving, reckless driving, driving under the influence/impaired or any other possible CDL disqualifying violations
> Leaving the scene of an accident
> Failure to report any accident to a supervisor immediately regardless of severity
> Any accident caused by gross negligence or misconduct

>**Corrective Action.** All corrective action will be based on the employees total point accumulation in a moving 12-month period from date of occurrence as follows:
>
>*5 Points*
>Written warning and safety re-training
>
>*10 Points*
>Final warning – five (5) day suspension without pay and safety re-training
>
>*15 Points*
>Subject to removal from all driving positions for up to 36 months
>Discipline up to and including termination
>
>[ . . . ] Any employee that shows a pattern of unsafe work habits will be subject to discipline up to an including termination. [. . . .] Any employee who accumulates ten (10) points twice in a moving twelve (12) month period will be subject to disqualification from all driving positions and discipline up to and including termination.

(*Id.* at 38-39.)

During Gravert's employment at Shamrock, he received several employee discipline forms and reports. On February 12, 2007, he received a time card violation warning. (ECF No. 22-1 at 7.) On April 30, 2009, he received an employee discipline form for driving more than 14 hours per day. (*Id.* at 8.) Both of these discipline forms, Gravert concedes, were fair and appropriately given. (*Id.* at 7-8.) On July 28, 2009, he was given another employee discipline form for driving more than 14 hours per day. (*Id.* at 8.) Gravert does not contest that he committed the infraction, but says he should have been given the evaluation sooner after the incident. (*Id.*)

Prior to 2011, Gravert was involved in at least three incidents which resulted in Shamrock accident reports. On March 12, 2007, an incident occurred in which Gravert "backed up too far," causing a small amount of damage to a grassy hill. (*Id.* at 10-11.) At his deposition he said "yes" when asked whether he "knew that—regardless of the small amount of damage that was caused, you need to report what happened?" (*Id.* at 11.) On September 25, 2007, Gravert

was in an accident backing up into a parking lot at a Burger King and gas station, where he hit a truck with people inside, denting the truck. (*Id.* at 12-13.) On May 22, 2009, Gravert was in an accident while pulling out of a garage, damaging the garage door and two trailer hinges on the truck. (*Id.* at 14.)

The two accidents that Shamrock alleges caused Gravert to be terminated occurred in February of 2011. (ECF No. 22 ¶ 10.) In each instance, Shamrock first became aware of the accident upon being contacted by a third party claiming that a Shamrock driver had damaged its property. (ECF No. 22-3 at 2, 4.)

Shamrock determined that Gravert caused an accident on February 2, 2011 while making a delivery at Highlands Camp and Retreat Center ("Highlands Camp") resulting in observable damage to a gutter and board at that facility. (ECF No. 22-3 at 3; ECF No. 22-1 at 18.) Highlands Camp advised Shamrock that no other food providers used the dock where damage occurred on February 2, and Gravert was the only Shamrock driver at the Highlands Camp on that date. (ECF No. 22-3 at 2.) Gravert does not dispute that he had impact with a structure at Highlands Camp, or that there was observable damage at the delivery dock, but he disputes that he caused the damages in question. (ECF. No. 22-1 at 21-23.) Gravert states that he "did not hit the [] building" at Highlands Camp, but rather only hit a pole. (ECF No. 25 at 5.) The second accident Shamrock claims formed the basis for Gravert's termination occurred on February 11, 2011. A driver of a pick-up truck accused Gravert of knocking the mirror off his truck. Gravert denies that he was responsible for this, but took many pictures of the damage on the pick-up truck to mollify the driver. Gravert did not immediately report either of the accidents that occurred in February 2011 to Shamrock, as required by the Manual. (ECF No. 22-1 at 44-45.)

Gravert asserts that Shamrock's investigation of the accidents was "short" and "incomplete." (ECF No. 25 at 5.) Gravert points to the fact that Randy Minch, the manager assigned to investigate the February 2 incident, conducted his initial investigation "in the dark." (ECF No. 25 at 6.) Gravert does not dispute that Mr. Minch returned the next day to take photographs of the scene during daylight, nor does he dispute that Mr. Minch ultimately concluded that "Mr. Gravert's truck [] caused the damage on February 2, 2011." (ECF No. 25 at 6; ECF No. 32 at 1). As for the February 11 incident, Gravert asserts that he "attempted to photograph his vehicle, which would have shown the incident did not occur but was out of room on the roll of film and the pictures did not develop." (ECF No. 25 at 7.) According to Gravert's account, he was asked "why he had not called in" the accident and he "replied that he did not call in the accident as there was no accident that Gravert caused." (*Id.*)

When an accident involving a Shamrock driver is reported, Shamrock convenes an accident review committee, which "reviews accident reports, photographs, statements, and other evidence to determine the cause of accidents involving Shamrock drivers, and whether such accidents were preventable." (ECF No. 22 ¶ 21.) Mark D'Andrea is Shamrock's Safety Manager and served on the accident review committee that recommended that Gravert be terminated. (*Id.*) Four others, including drivers (non-management personnel) also served on the committee. (ECF No. 22-3 ¶ 4.) On February 23, 2011, the accident review committee met to review the February 2 and February 11 accidents. (ECF No. 22-3 ¶ 4.)

In reviewing the February 2 accident, the committee "unanimously determined that Plaintiff had caused the accident, had been aware of the accident, and had failed to immediately report the accident as required under Shamrock's policies." (*Id.* at ¶ 6.) Mr. D'Andrea's declaration states that "[i]n reviewing the February 2, 2011, accident, the Accident Review

6

Committee also considered Plaintiff's own explanation for what had allegedly occurred that day, and a diagram he had prepared as part of the accident report described above. Although the committee considered this evidence, it did not find Plaintiff's explanations regarding the accident to be credible." (*Id.* at ¶ 7.) The committee deemed the accident "preventable," assessing a point value for the accident of 15 points. (*Id.* at ¶ 8.) The accident review form stated that the committee concluded Gravert "knew he hit the building and did not report it." (ECF No. 22-4 at 45.)

In reviewing the February 11 accident, the committee "again unanimously determined that Plaintiff had caused the accident, had been aware of the accident, and had failed to immediately report the accident as required under Shamrock's policies." (ECF No. 22-3 ¶ 10.) The committee also assessed a fifteen point violation for this accident. (*Id.* at ¶ 12.) Shamrock filled out a final Employee Discipline Form telling Gravert that his "accidents on 2/02/2011 and 2/11/2011, were found Preventable by the accident review committee. At the time of the accidents you failed to report the accidents to a Manager or Supervisor and follow Shamrock Foods Accident Procedures." (ECF No. 22-2 at 32.) In the section marked "Consequences," the form says "Termination." (*Id.*) On February 25, 2011, the committee emailed its findings and recommendation to Shamrock managers and Gravert's supervisor; the committee's recommendation was accepted and Gravert was told he was terminated. (ECF No. 22-3 ¶ 15, 16.)

Mr. D'Andrea's declaration states that the committee "did not consider Plaintiff's age in recommending the assessment of fifteen points, and termination, for each of his two unreported accidents. In fact, four of the five committee members, including myself, were over the age of forty at the time the committee made these recommendations." (ECF No. 22-3 ¶ 14.) At

Gravert's deposition, he was asked whether "anything ever happen[ed] to you at Shamrock Food that you think was because of your age," to which Gravert replied, "[n]o, sir." (ECF No. 22-1 at 5.)

## III.  ANALYSIS

Gravert asserts three claims for relief, including two claims of age discrimination under the ADEA and the Colorado Anti-Discrimination Act ("CADA") and one claim for breach of employment contract under Colorado common law. (ECF No. 2.)  The Court applies the same legal standard to both the state and federal discrimination act claims. *See Bodaghi v. Department of Natural Resources*, 995 P.2d 288, 297-98 (Colo. 2000) (adopting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) for use in CADA claims)). Thus, the Court will not address Gravert's CADA claim separately.

### A.  Gravert's Position

Gravert's argument in response to the Motion is not a model of clarity as expressed in the Opposition to Motion for Summary Judgment ("Opposition").  (ECF No. 25.)  This Court's understanding of Gravert's position is as follows:  Gravert denies that he was involved in whatever accidents caused the reported damage to a building and a truck on February 2 and 11, respectively.  Because there was no accident (at least involving him), Gravert could not have failed to report an accident.  And, if Shamrock terminated him for accidents which did not occur, then it did so to disguise its true reason for Gravert's termination – which must be age discrimination.  Thus, the non-occurrence of the accidents proves both a prima facie case of discrimination and that Shamrock's justification was pretextual.  Additionally, Gravert contends that the investigation and corresponding conclusions of the accident review committee were inadequate and incorrect, and a breach of implied contract.

### B. ADEA Claims

The ADEA prohibits employers from discharging any individual "because of such individual's age." 29 U.S.C. § 623(a)(1). Gravert has not put forth any direct evidence of discrimination. His ADEA claim must therefore be evaluated using the three-step framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-4 (1973) ("*McDonnell*"). *See Jones v. Oklahoma City Pub. Schools*, 617 F.3d 1273, 1277-79 (10th Cir. 2010) (upholding the applicability of McDonnell to ADEA claims). Under *McDonnell*, the plaintiff must establish a prima facie case of discrimination. If the plaintiff fails to establish a prima facie case, however, the court need not reach the second and third steps and may grant summary judgment in favor of the defendant. *See Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008) ("In the absence of facts tending to establish this initial inference, plaintiff is not entitled to the presumption of discrimination and a defendant is not required to defend against the charge."). If the plaintiff is successful on this first step, the defendant may present a legitimate, non-discriminatory reason for the termination to obtain summary judgment against the plaintiff's claim. *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1113 (10th Cir. 2007). Assuming the defendant can articulate such a reason, to survive summary judgment, the plaintiff must then come forward with evidence establishing that the defendant's proffered reason was merely pretext for discrimination. *Id.*

#### i. Gravert Cannot Make Out a Prima Facie Case of Discrimination

In order to establish a prima facie case of discrimination, the first stage of the *McDonnell* framework, a plaintiff must generally demonstrate all of the following: (1) he is within the protected age group; (2) he was doing satisfactory work; (3) he was discharged, and (4) his

position was filled by a younger person. *Rivera v. City & Cty. of Denver*, 365 F.3d 912, 920 (10th Cir. 2004).

Shamrock does not dispute that Gravert was terminated or that he was 46 at the time of his discharge; therefore, the first and third elements of his prima facie case are established. However, Shamrock contends that Gravert has failed to establish the second and fourth elements because (a) Gravert was not doing satisfactory work, and (b) Shamrock did not replace Gravert with a younger employee.

Shamrock argues that Gravert's "performance was unsatisfactory both before and during his two unreported accidents in February 2011 [which] prevents him from satisfying the second element of his prima facie case." (ECF No. 22 at 15.) It is undisputed that Gravert received employee discipline that he thought was appropriate numerous times during his time at Shamrock. (*See, e.g.*, ECF No. 22-1 at 7, 8.) The Manual provides, and Gravert acknowledged being aware that it provides, for the termination of drivers who "fail to report any accident to a supervisor immediately regardless of severity." (ECF No. 22-2 at 37; ECF No. 22-1 at 11.) And it is undisputed that Gravert was involved in at least one minor accident involving contact with a pole at Highlands Camp on February 2, 2011, which was unreported. (ECF No. 22-1 at 22.)

Even putting aside the damage-inflicting accidents on February 2 and 11, 2011, it cannot be said that Gravert was doing satisfactory work. Challenged by the record of previous employee discipline, Gravert does not take issue with those facts. Instead, he simply dismisses them, claiming them to be "not relevant" and a "pretext" because Gravert was not terminated on the basis of these events. (ECF No. 25 at 3.) Moreover, despite the fact that Gravert's Complaint seemingly recognized the significance of the satisfactory performance issue by alleging satisfactory performance, progress reports and rating sheets (ECF No. 2 ¶¶ 10-11), no

evidence supporting these allegations was put forward or identified in Gravert's Opposition, nor in Gravert's Affidavit. (ECF No. 25, ECF No. 26.) Gravert has essentially opted to decline to present evidence which would create a genuine issue with respect to this element of a prima facie case of discrimination.

As to the fourth element, that the plaintiff was replaced by a younger person, Gravert adopts an odd position. In response to Shamrock's claim that Gravert has no evidence that he was replaced by a younger person, Gravert offers a single document entitled "Shamrock Drivers as of 11/29.2011," which includes a list of names, hire dates, and ages. (ECF No. 27 at 1-2.) According to this document (the "Drivers List"), twenty-one drivers who were on hand on November 29, 2011were hired after Gravert was terminated. (*Id.*) Of these new hires, five were over the age of 40 (42, 50, 44, 49, and 48), one was 40, and the remainder ranged in age from 23 to 38. (*Id.*) The first driver hired after Gravert's termination, Patrick A. DuBois, was 42 years old when he was hired. (*Id.*) Gravert argues that the Drivers List establishes that he was "replaced by younger *people*" (ECF No. 25 at 4) (emphasis added).

The Court finds that the Drivers List is insufficient standing alone to establish whether Gravert was replaced by a younger person upon his termination. The problem with the Drivers List is that it does not answer the question of who replaced Gravert at Shamrock. His actual replacement may have been the first hire after his termination (age 42), the fifth (age 50), or the eighth (age 28). The driver may have been someone no longer employed on November 29, 2011. There is simply no way to tell.[1] Without knowing such things as how many driving positions

---

[1] Shamrock invites the Court to infer that Mr. DuBois (age 42) is the best presumed replacement for Gravert, as he was the first driver hired after Gravert's termination. Shamrock then suggests that the age difference between Gravert (46) and Mr. DuBois (42) is insufficient to make out a prima facie case of age discrimination. *See Munoz v. St. Mary-Corwin Hosp.,* 221 F.3d 1160, 1166 (10th Cir. 2000) (holding that "because plaintiff's replacement was only two years his junior – an obviously insignificant difference – the necessary inference of discrimination was precluded, and he failed to establish his prima facie case"). While the Court would be inclined to find that a four-year difference between a 46-year old and a 42-year old replacement is legally insignificant for purposes of the

were open at the time of Gravert s termination, when "his" position was advertised or otherwise made available in the marketplace, the composition of the applicant pool, and how positions are filled, it is impossible to do anything other than speculate as to what the Drivers List shows as to Gravert's specific replacement. And Gravert does not attempt to tell the Court. Instead, similar to the approach taken with respect to satisfactory performance, he offers a conclusory statement about being "replaced by younger people" and disregards the technical requirements for setting forth a prima facie case.

The Court recognizes that the test should not be applied so rigidly that it becomes mechanistic and ignores the objective which the test is meant to achieve—establishing some threshold evidence which supports discriminatory animus. *See, e.g.*, *Plotke v. White*, 405 F.3d 1092, 1099-1101 (10th Cir. 2005) ("[T]he fourth element of a prima facie case is a flexible one that can be satisfied differently depending in varying scenarios."). But the evidence offered by Gravert invites only speculation at best, and works against his argument at worst. If, instead of the Drivers List as of November 29, the Court had access to data concerning all drivers who left the company (regardless of reason) during a specific period surrounding Gravert's termination date, and all drivers hired during that same timeframe, perhaps some reasonable inferences could be drawn from the numbers as to whether Shamrock was replacing older drivers such as Gravert with younger ones. But a snapshot of a list of drivers at a single point in time does not permit any comparable inference.

Indeed, even with all its limitations, if any attempt is made to draw reasonable inferences from the Drivers List, by comparing the 21 drivers revealed by the list as hired after Gravert's

---

fourth element of a prima facie case of age discrimination, it cannot draw the inference suggested by Shamrock. In addition to the previously stated reasons why the Drivers List does not permit any inference other than a speculative one, the Court notes that a 33-year old named Elias Garay was terminated 10 days before Gravert for failing to report an accident. If the "next man up" inference had any validity, Mr. DuBois might more likely be seen as Mr. Garay's replacement. (*See* ECF No. 27-1.)

termination with the 21 hired before his termination, the inferences are not favorable to Gravert. After his termination, of the 21 drivers, there were six hired who were age 40 or older who appear on the Drivers List, and three who were older than Gravert (46) at the time of his termination. Before his termination, of the 21 drivers, there were five hired who were age forty or older who appear on the Drivers List and, again, three who were older than Gravert at the time of his termination. The difference is meaningless.

### ii. Shamrock Had a Legitimate Non-Discriminatory Reason to Terminate Gravert

Shamrock argues that, regardless of whether Gravert can establish a prima facie case, it had a legitimate, non-discriminatory reason to terminate Gravert – his accidents and the failure to report them. (ECF No. 22 at 15.) These reasons were proffered at the time of Gravert's termination, and were consistently expressed as the reason for termination. (*See* ECF No. 28-2; ECF No. 28-3; ECF No. 22-3; ECF No. 22-4.) Gravert argues that "no accidents occurred for which termination can be justified." (ECF No. 25 at 5.) But Gravert's position was considered and rejected by the accident review committee. (ECF No. 22-3 ¶¶ 7, 11.) Regardless of the accuracy of Gravert's claim, "[e]ven a mistaken belief can be a legitimate, non-pretextual reason for an employment decision." *Piercy v. Maketa*, 480 F.3d 1192, 1200 (10th Cir. 2007).

This Court concludes that Shamrock had and relied upon a legitimate, non-discriminatory reason for terminating Gravert. Thus, even if Gravert could make out a prima facie case, Shamrock has satisfied the second step of the *McDonnell* framework, and the analysis now turns to pretext.

### iii. Gravert Cannot Establish Pretext

Gravert argues that Shamrock's proffered reason for termination is pretextual. A plaintiff can make a showing of pretext in a variety of ways, such as by putting forth "evidence

that the defendant's stated reason for the adverse employment action was false," or "evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances," or "evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff." *Kendrick v. Penske Transp. Servs., Inc.,* 220 F.3d 1220, 1230 (10th Cir. 2000).

Gravert fails to identify any evidence in the record that demonstrates that Shamrock's stated reason for termination was false. There is apparently no evidence that the accident review committee failed to recommend termination for other drivers who failed to report an accident. (ECF No. 22-1 at 41:24-42:2.) There is evidence that, apart from Gravert, Shamrock has terminated seven other drivers since mid-2008 for failing to report an accident. (ECF No. 27-1.) Of those, three were age 35 or younger and one – Mr. Garay (age 33) – was terminated 10 days before Gravert. (*Id.*) A member of the accident review committee stated by affidavit that age played no role in the committee's decision. (ECF No. 22-3 ¶ 14.) Gravert himself testified that he "d[id] not know" that the accident review committee came to any conclusions based on his age. (ECF No. 30 at 3.) There is no persuasive evidence that the accident review committee conducted its review in a manner inconsistent with the provisions of the Manual, or that Gravert was not given an opportunity to be heard. In fact, he readily acknowledges that he appeared and was heard by the committee. (ECF No. 22-1 at 35.) In short, there is no credible evidence whatsoever of pretext.

Gravert's argument with regard to pretext is, again, that there were no accidents. But the mere fact that he disagrees with the committee's conclusions and what it chose to rely upon does not establish pretext. Even if the committee's conclusions were wrong, that hardly supports a

14

conclusion of pretext where the facts before the committee were suggestive of the conclusions actually reached. For each accident, a third party reported that a Shamrock driver had been involved. In each case, observable damage did occur. And in each case, Gravert was on the scene at or about the time the damage occurred. It simply is not the case that a "pretext" must flow from a finding that Gravert was involved in these accidents simply because Gravert makes an unsubstantiated claim that he did not cause the accidents.

At each stage of the analysis discussed above, Gravert's position fails the *McDonnell* test for permitting a discrimination case to go forward. Summary judgment is therefore appropriate.[2]

### C. Breach of Contract Claim

Gravert's Complaint also alleges breach of contract, saying that "Plaintiff, as an employee of Defendant Shamrock, entered into various contracts with Shamrock regarding conditions of employment and his service, concerning compensation, benefits, other terms and conditions, including the proper procedures both Plaintiff and Defendant Shamrock were to follow in connection with claimed delivery driver accidents." (ECF No. 2 ¶ 23.) Gravert claims he "complied in all respects with his obligations under these contracts with Defendant Shamrock while Defendant Shamrock did not." (*Id.*) While Gravert's Complaint does not specify any of the particulars regarding the contract(s) to which he is referring, he said in his deposition that the Manual, which he received in April 2009, was the document upon which his breach of contract claim is based. (ECF No. 22-1 at 42.)

---

[2] Gravert's Complaint also appears to allege (albeit, included within the ADEA cause of action section) a hostile work environment charge. However, Gravert does not appear to be alleging as a separate claim unrelated to his termination that Shamrock created a hostile work environment, and neither party treated this as a separate and distinct claim in any of the pleadings. Indeed, the fact that Gravert responded "[n]o, sir" when asked during his deposition whether anything "ever" happened to him at Shamrock before his termination based on his age seemingly precludes such a possibility. (ECF No. 22-1 at 2.) Thus, this Court will not address this allegation as a separate claim.

In the Motion, Shamrock has come forward with both a confidentiality agreement signed by Gravert and a copy of the Manual provided to him. The Court notes that the confidentiality agreement contains the "at-will" provision discussed above in Section II. Shamrock alleges that this language is sufficiently conspicuous and unambiguous so as to render Gravert an at-will employee as a matter of law and to preclude the formation of implied contracts governing his right to continued employment by virtue of the provisions in the Manual. This Court agrees. *See Hardy v. S.F. Phosphates Ltd. Co.*, 183 F.3d 1076, 1083-84 (10th Cir. 1999); *Kerstien v. McGraw-Hill Companies, Inc.*, 7 F. App'x 868, 875 (10th Cir. 2001) (citing Colorado state caselaw).

Moreover, the Manual contains no provision which the Court can reasonably construe as creating a contractual limit on Shamrock's ability to terminate employees. The Manual advises employees what they must do in the event of an accident. It advises that an accident review committee will assess all accidents deemed "preventable" by the committee, and that failure to report an accident immediately can result in 15 points and potential termination. Nothing in the Manual gives a driver protection from termination under these circumstances. Drivers are permitted to appear before the accident review committee – which Gravert did – and to have the committee make determinations regarding an accident – which the committee did. Gravert was entitled to appeal the committee's decision, but he did not do so. (ECF No. 30 at 4.) There is simply no language which restricts Shamrock's ability to discharge an employee because the employee disagrees with the committee's determination.

Even were this matter not resolvable on the basis of the relevant language as a matter of law, Gravert's Opposition is devoid of any factual assertions which would create a genuine issue of material fact. The specific promises Shamrock is alleged to have made and breached are not

fully articulated by Gravert's Complaint or briefing.  In the section of his Opposition devoted to his breach of contract claims, Gravert claims that "the Accident Review Committee…relied upon partial and erroneous facts, but also behaved in an arbitrary and unreasonable manner designed to go through the motions of a review when in reality their mind was made up without reference to the truth of the facts under review." (*Id.* at 18-19.)  This is argument, allegation and accusation, but it is not fact.  Gravert's position is essentially that the committee's investigation and determination must be without error and must be agreeable to the driver or else he may not be terminated without breach of contract.  No such provision is expressed or implied by the Manual, nor is any other provision which would preclude Shamrock from terminating Gravert.  This Court accordingly finds Gravert's claims of breach of contract wholly without merit.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion for Summary Judgment (ECF No. 22) is GRANTED;

2. The Clerk shall enter judgment in favor of Defendant on all claims; and

3. The trial preparation conference set for July 1, 2013 and the trial set for July 15, 2013 are each VACATED.

Dated this 14th day of June, 2013.

BY THE COURT:

_____
Raymond P. Moore
United States District Judge